UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
LEE-KOH LEH,
*on behalf of herself and others similarly situated,*
                                            Plaintiff,          Case No. 22-cv-01614

                              v.                    **29 U.S.C. § 216(B)**
                                                    **COLLECTIVE ACTION & FED.**
FIVE STAR BEAUTY SALON, INC.,                       **R. CIV. P. 23 CLASS ACTION**
LADY BEAUTY SALON INC.,
NEW LADY INC,                                       **COMPLAINT**
HSIU HSIUNG LIN
        a/k/a Xiu Xiong Lin,                        **JURY DEMAND**
JACQUELIN LIN, and
YUEHO LINLI
        a/k/a Yueh O Li Lin
        a/k/a Yueh-O Lin
        a/k/a Yue'e Lin,
                                            Defendants.
------------------------------------------------------------------x

        Plaintiff LEE-KOH LEH (hereinafter referred to as "Plaintiff" or "LEH"), by and through

her attorneys, Troy Law, PLLC, hereby brings this complaint against Defendants FIVE STAR

BEAUTY SALON, INC., LADY BEAUTY SALON INC., and NEW LADY INC (hereinafter

"Corporate Defendants"), and HSIU HSIUNG LIN a/k/a Xiu Xiong Lin, JACQUELIN LIN, and

YUEHO LINLI a/k/a Yueh O Li Lin a/k/a Yueh-O Lin a/k/a Yue'e Lin,  (hereinafter "Individual

Defendants") (hereinafter with Corporate Defendants, "Defendants"), and alleges as follows:

## INTRODUCTION

        1.      LEH brings this action on behalf of herself and other similarly situated employees

of the beauty salon operated by FIVE STAR BEAUTY SALON, INC. at 41-36 Main Street, 1st

Floor, Flushing, NY 11355 against Defendants for violation of the Fair Labor Standards Act

("FLSA"), 29 U.S.C. §§ 201 *et seq.*, of the Wage Theft Prevention Act ("WTPA") and Minimum

Wage Act ("MWA") incorporated in the New York Labor Law ("NYLL"), N.Y. Lab. L. §§ 190

*et seq.*, 650 *et seq.*, and the Minimum Wage Order for Miscellaneous Industries and Occupations

("Wage Order"), 12 N.Y.C.R.R. § 142, arising from Defendants' various willful, malicious, and unlawful employment policies, patterns, and/or practices.

2.     LEH alleges pursuant to FLSA that she is entitled to recover from the Defendants: (1) unpaid minimum wages, (2) unpaid overtime wages, (3) liquidated damages, and/or (4) attorneys' fees and costs.

3.     ZHANG alleges pursuant to NYLL and the Wage Order that she is entitled to recover from the Defendants: (1) unpaid minimum wages, (2) unpaid overtime wages, (3) unpaid spread of time wages, (4) liquidated damages, (5) statutory damages for failure to provide accurate wage statements with each payment of wages, (6) prejudgment and postjudgment interest, and (7) reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

4.     This Court has subject-matter jurisdiction over this controversy under Section 216(b) of the FLSA and Section 1331 of Title 28 of the United States Code.

5.     This Court has supplemental jurisdiction over Abe's state-law claims under Section 1367, Subsection (a) of Title 28 of the United States Code.

6.     Venue is proper in the United States District Court for the Eastern District of New York pursuant to Section 1391, Subsections (b) and (c) of Title 28 of the United States Code, because Defendants conduct business in the Eastern District of New York, and because the acts and omissions giving rise to the claims alleged herein took place within the Eastern District of New York.

## PLAINTIFF

7.     LEH was employed by the Defendants from on or about December 1, 1999 through on or about March 20, 2020, then from on or about June 22, 2020 through on or about March 7, 2022 to work as a hairdresser at Defendants' beauty salon, known as "San Mei" (meaning "Three

Beauty") in Chinese and "Five Star Beauty Salon" in English, located at 41-36 Main Street, 1st Floor, Flushing, NY 11355.

**DEFENDANTS**

*Corporate Defendants*

8.    FIVE STAR BEAUTY SALON, INC. was, throughout the period relevant to this lawsuit, and remains, a domestic business corporation with a registered address at 133-49 41st Road, 1st Floor, Flushing, NY 11355, and a principal place of business at 41-36 Main Street, 1st Floor, Flushing, NY 11355.

9.    FIVE STAR BEAUTY SALON, INC. was during the period relevant to this lawsuit a business with gross annual revenue in excess of $500,000.00 per year.

10.    FIVE STAR BEAUTY SALON, INC. was during the period relevant to this lawsuit a business engaged in interstate or foreign commerce.

11.    FIVE STAR BEAUTY SALON, INC. was during the period relevant to this lawsuit a business that employed more than ten (10) employees.

12.    LADY BEAUTY SALON INC. was, from the beginning of the period relevant to this lawsuit through July 23, 2018, a domestic business corporation with a registered address and principal place of business at 133-49 41st Road, 1st Floor, Flushing, NY 11355.

13.    LADY BEAUTY SALON INC. was during the period relevant to this lawsuit a business with gross annual revenue in excess of $500,000.00 per year.

14.    LADY BEAUTY SALON INC. was during the period relevant to this lawsuit a business engaged in interstate or foreign commerce.

15.    LADY BEAUTY SALON INC. was during the period relevant to this lawsuit a business that employed more than ten (10) employees.

16.    NEW LADY INC was, from January 19, 2018 and through the remainder of the

period relevant to this lawsuit, and remains, a domestic business corporation with a registered address and principal place of business at 133-49 41st Road, 1st Floor, Flushing, NY 11355.

17.    NEW LADY INC was during the period relevant to this lawsuit a business with gross annual revenue in excess of $500,000.00 per year.

18.    NEW LADY INC was during the period relevant to this lawsuit a business engaged in interstate or foreign commerce.

19.    NEW LADY INC was during the period relevant to this lawsuit a business that employed more than ten (10) employees.

### *Individual Defendants*

20.    HSIU HSIUNG LIN a/k/a Xiu Xiong Lin is an owner of FIVE STAR BEAUTY SALON, INC.

21.    HSIU HSIUNG LIN a/k/a Xiu Xiong Lin is the principal of FIVE STAR BEAUTY SALON, INC.'s appearance enhancement business license.

22.    HSIU HSIUNG LIN a/k/a Xiu Xiong Lin was throughout the period relevant to this lawsuit an active day-to-day manager at "San Mei" and was known to LEH as the "Boss."

23.    HSIU HSIUNG LIN a/k/a Xiu Xiong Lin throughout the period relevant to this lawsuit hired each of the employees who worked at "San Mei," includhing LEH, and had the power to fire them; determined the schedules and conditions of employment for each of the employees who worked at "San Mei," including LEH; determined the pay rates for each of the employees who worked at "San Mei," including LEH and gave them their pay; and kept records for FIVE STAR BEAUTY SALON, INC.

24.    HSIU HSIUNG LIN a/k/a Xiu Xiong Lin acted willfully, intentionally, and maliciously and is an employer within the meaning of the FLSA and NYLL, and is jointly and severally liable with Corporate Defendants.

25.     JACQUELIN LIN is HSIU HSIUNG LIN a/k/a Xiu Xiong Lin's and YUEHO LINLI a/k/a Yueh O Li Lin a/k/a Yueh-O Lin a/k/a Yue'e Lin's daughter.

26.     JACQUELIN LIN was throughout the period relevant to this lawsuit an active day-to-day manager at "San Mei," alongside and exercising the same powers and responsibilities as her father.

27.     YUEHO LINLI a/k/a Yueh O Li Lin a/k/a Yueh-O Lin a/k/a Yue'e Lin was throughout the period relevant to this lawsuit an active day-to-day manager at Defendants' beauty salon, known as "Shu Ni" (meaning "Fair Lady") in Chinese and "Five Star Beauty Salon in English, located at 133-49 41st Road, 1st Floor, Flushing, NY 11355, and was known to LEH as the "Lady Boss."

28.     YUEHO LINLI a/k/a Yueh O Li Lin a/k/a Yueh-O Lin a/k/a Yue'e Lin is the principal of LADY BEAUTY SALON INC.'s appearance enhancement business license, which is active through February 19, 2023 and is in continued use by NEW LADY INC.

29.     YUEHO LINLI a/k/a Yueh O Li Lin a/k/a Yueh-O Lin a/k/a Yue'e Lin is an officer and the chairman of FIVE STAR BEAUTY SALON, INC.

30.     YUEHO LINLI a/k/a Yueh O Li Lin a/k/a Yueh-O Lin a/k/a Yue'e Lin was, prior to the period relevant to this lawsuit, an officer and the chairman of New Lady Beauty Salon Inc., a domestic business corporation with a registered address and principal place of business at 133-49 41st Road, 1st Floor, Flushing, NY 11355.

31.     YUEHO LINLI a/k/a Yueh O Li Lin a/k/a Yueh-O Lin a/k/a Yue'e Lin is HSIU HSIUNG LIN a/k/a Xiu Xiong Lin's wife. The two of them consult together and come to agreements on their courses of acton before exercising their powers with respect to employees at "Shu Ni" and "San Mei."

32.     YUEHO LINLI a/k/a Yueh O Li Lin a/k/a Yueh-O Lin a/k/a Yue'e Lin throughout the period relevant to this lawsuit hired each of the employees who worked at Shu Ni, and had the power to fire them; determined the schedules and conditions of employment for each of the employees who worked at Shu Ni; determined the pay rates for each of the employees who worked at Shu Ni, and gave them their pay; and kept records for LADY BEAUTY SALON INC. and NEW LADY INC.

33.     YUEHO LINLI a/k/a Yueh O Li Lin a/k/a Yueh-O Lin a/k/a Yue'e Lin acted willfully, intentionally, and maliciously and is an employer within the meaning of the FLSA and NYLL, and is jointly and severally liable with Corporate Defendants.

## STATEMENT OF FACTS

### NEW LADY INC Is a Successor to LADY BEAUTY SALON INC. as well as Being Directly Liable to JIN as Her Employer

34.     LADY BEAUTY SALON INC. operated "Shu Ni" from the beginning of the period relevant to this lawsuit through between about January 18, 2018, when NEW LADY INC was formed, and July 23, 2018, when LADY BEAUTY SALON INC. was dissolved.

35.     Thereafter, through the period relevant to this lawsuit, NEW LADY INC operated "Shu Ni."

36.     LADY BEAUTY SALON INC. transferred all its assets, including the business license (which remained under LADY BEAUTY SALON INC.'s name despite its dissolution), lease, business, equipment, telephone number, goodwill, and other assets, to NEW LADY INC between on or about January 18, 2018 and July 23, 2018.

37.     YUEHO LINLI a/k/a Yueh O Li Lin a/k/a Yueh-O Lin a/k/a Yue'e Lin was an owner and officer of both LADY BEAUTY SALON INC. and NEW LADY INC, and the day-to-day manager of "Shu Ni" before and after the transfer.

38.     Employees who were working at "Shu Ni" before the transfer, continued working after the transfer.

39.     "Shu Ni" continued doing business with no substantial interruption, change in staff, or change in management, before and after the transfer.

40.     NEW LADY INC and LADY BEAUTY SALON INC. de facto merged, and alternatively, NEW LADY INC merely continued or substantially continued LADY BEAUTY SALON INC.'s business at "Shu Ni."

### *LADY BEAUTY SALON INC. and NEW LADY INC, IN SUCCESSION, formed a Single Integrated Enterprise with FIVE STAR BEAUTY SALON, INC.*

41.     "Shu Ni" and "San Mei" were operated jointly by the Individual Defendants, who together centralized, controlled, and implemented a unified scheme of labor relations.

42.     In particular, HSIU HSIUNG LIN a/k/a Xiu Xiong Lin and YUEHO LINLI a/k/a Yueh O Li Lin a/k/a Yueh-O Lin a/k/a Yue'e Lin's would consult together and come to agreements on their courses of acton before exercising their powers with respect to employees at "Shu Ni" and "San Mei."

43.     Further, YUEHO LINLI a/k/a Yueh O Li Lin a/k/a Yueh-O Lin a/k/a Yue'e Lin is an officer and the chairman of FIVE STAR BEAUTY SALON, INC. while at the same time actively managing "Shu Ni."

44.     Further, "Shu Ni" and "San Mei" both present themselves as outlets of a chain known as "Five Star Beauty Salon."

45.     "Shu Ni" and "San Mei" are located within one block of each other.

46.     "Shu Ni" would provide "San Mei" with materials necessary to do business, for instance hair dye and chemicals necessary for "perms," when it ran short, and vice versa.

47.     "Shu Ni" is located next to another, competing hair salon. When it has too many

customers for its staff to handle, rather than have them wait and possibly take their business to the neighboring competitor, "Shu Ni" will requisition employees from "San Mei" to tend to its customers. LEH was among the employees so requisitioned, from time to time.

### Plaintiff LEE-KOH LEH

48.     Defendants did not post the labor law notice posters required by Section 516.4 of Title 29 of the Code of Federal Regulations or Section 142-2.8 of the Wage Order.

49.     LEH was employed by the Defendants from on or about December 1, 1992 through on or about March 20, 2020, then from on or about June 22, 2020 through on or about March 7, 2022 to work as a hairdresser at "San Mei."

50.     LEH was employed as a hairdresser. LEH's primary duties were to cut, wash, dye, and perm customers' hair.

51.     Throughout the period relevant to this lawsuit, through about December 31, 2017, LEH regularly worked sixty-six (66) hours per week: from 09:00 hours (9:00 AM) through 20:00 hours (8:00 PM), Mondays, Tuesdays, Wednesdays, Thursdays, Saturdays, and Sundays.

52.     From about January 1, 2018 through about March 20, 2020 LEH regularly worked fifty-five (55) hours per week: from 09:00 hours (9:00 AM) through 20:00 hours (8:00 PM), Mondays, Tuesdays, Wednesdays, Saturdays, and Sundays.

53.     From about June 22, 2020 for about four weeks, LEH regularly worked forty-five (45) hours per week: from 09:00 hours (9:00 AM) through 18:00 hours (6:00 PM), five days per week.

54.     Thereafter, through about March 7, 2022, LEH regularly worked fifty-one (51) hours per week: from 09:00 hours (9:00 AM) through 18:00 hours (6:00 PM), Mondays, Tuesdays, Wednesdays, Thursdays, Saturdays, and Sundays.

55.     LEH did not have regularly scheduled meal or rest breaks during the working day,

and was not wholly relieved from work at any time during the day to rest or eat. Iif a customer came while she wasn't working, she would have to stop what she was doing and attend to the customer.

56.     Defendants did not keep any records of LEH's working time.

57.     From the beginning of the period relevant to this lawsuit, through about March 20, 2020, LEH was paid a flat fifty-five dollars ($55.00) per day.

58.     From about June 22, 2020 through about May 7, 2022, LEH was no longer paid a base salary, and instead was paid a per-service commission ranging from fifty percent (50%) of the cost to the customer for haircuts to thirty percent (30%) of the cost to the customer for perms or dyeing. While it would fluctuate based on the tasks she performed, on average, LEH's commission amounted to about thirty-five dollars ($35.00) per day.

59.     Throughout her employment, LEH also earned tips from customers. However, LEH was not given any notice, at the time she was hired or at any other time during her employment, that Defendants were claiming a tip allowance as part of the minimum wage, pursuant to Section 195.1 of the WTPA.

60.     Defendants did not keep a record of LEH's base pay, commission, or tips.

61.     Throughout her employment, LEH's base salary and commission amounted to less than the New York and federal minimum wages.

62.     LEH's base salary and commission did not include pay for any hours worked in a week beyond the fortieth (40th) hour.

63.     LEH's base salary and commission did not include an extra hour's pay for each day she worked a spread of time greater than ten (10) hours.

64.     Defendants failed to provide LEH a wage state statement with each payment of

wages listing the following: the dates of work covered by that payment of wages; her name; her employer's name, address, and telephone number; her regular and overtime rates of pay and the bases thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; her gross wages; any deductions from her wages; any allowances claimed as part of the minimum wage; and her net wages.

65.    Defendants committed the foregoing acts knowingly, intentionally, willfully and maliciously against LEH, the collective and the class.

## COLLECTIVE ALLEGATIONS

66.    LEH brings this action individually and on behalf of all other current and former non-exempt workers employed by Defendants at "San Mei" over the three years preceding the filing of this Complaint, through entry of judgment in this case (the "Collective").

## CLASS ALLEGATIONS

67.    LEH brings her state-law claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all other current and former non-exempt workers employed by Defendants at "San Mei" over the six years preceding the filing of this Complaint, through entry of judgment in this case (the "Class").

68.    The Class members are readily ascertainable. The Class members' number, names, addresses, positions held, hours assigned and worked, and rates of pay are determinable from Defendants' records. Notice can be provided by means permissible under Rule 23.

### *Numerosity*

69.    The Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

70.    Although the precise number of such persons is unknown, and the facts on which the calculation of the precise number are presently within the sole control of Defendants, upon information and belief, there are more than 40 members of the Class.

### *Commonality*

71.    There are questions of law and fact common to the Class which predominate over any questions affecting individual members, including: (1) whether Defendants employed the Class members within the meaning of New York law; (2) whether the Class members were paid less than the minimum wage; (3) whether the Class members were paid overtime; (4) whether the Class members were paid an extra hour's pay at the minimum wage for each day their spread of time exceeded 10 hours; (5) whether the Class members were provided with wage statements adequate under Section 195.3 of the NYLL; and (6) at what common rate, or rates subject to common method of calculation, were and are Defendants required to pay Class members?

### *Typicality*

72.    LEH's claims are typical of those claims which could be alleged by any Class member, and the relief sought is typical of the relief that would be sought by any Class member in a separate action.

73.    All the Class members were subject to the same policy and practice of denying minimum wages, overtime, and spread of time.

74.    Defendants' policy and practice affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member.

75.    LEH and the other Class members sustained similar losses, injuries, and damages arising from the same unlawful policy and practice.

*Adequacy*

76. LEH is fairly and adequately able to protect the interests of the Class and has no interests antagonistic to the Class.

77. LEH is represented by attorneys who are experienced and competent in representing plaintiffs in both class actions and wage-and-hour employment litigations.

*Superiority*

78. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant.

79. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender.

80. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.

81. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.

82. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the

impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.

83.     The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

84.     Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law.

85.     Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.

86.     Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.

87.     Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## CAUSES OF ACTION

### COUNT I.
### VIOLATION OF 29 U.S.C. § 206—FAILURE TO PAY MINIMUM WAGE
### BROUGHT ON BEHALF OF THE PLAINTIFF AND THE COLLECTIVE

88.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

89.     Section 206, Subsection (a) of the FLSA provides that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at… $7.25 an hour, beginning 24 months after [the] 60th day [after May 25, 2007]."

90.    LEH's base daily salary prior to about March 20, 2020 did not amount to more than the minimum wage.

91.    LEH did not receive any base pay after returning to work on or about June 22, 2020.

92.    LEH's commission after returning to work on or about June 22, 2020 did not amount to more than the minimum wage.

93.    Section 216, subsection (b) of the FLSA provides that "[a]ny employer who violates the provisions of section 206… of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages… and in an additional equal amount as liquidated damages," and further provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."

94.    Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA by failing to pay LEH at least the minimum wage.

## COUNT II.
## VIOLATION OF N.Y. LAB. L. § 652 AND 12 N.Y.C.R.R. § 142-2.1—FAILURE TO PAY MINIMUM WAGE
## BROUGHT ON BEHALF OF THE PLAINTIFF AND THE CLASS

95.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

96.    Section 652.1, subsection (b) of the NYLL provides that "[e]very employer shall pay to each of its employees for each hour worked a wage of not less than[] $9.00 on and after December 31, 2015," and that "[e]very employer of eleven or more employees shall pay to each of its employees for each hour worked in the city of New York a wage of not less than: $11.00 per hour on and after December 31, 2016, $13.00 per hour on and after December 31, 2017, [and] $15.00 per hour on and after December 31, 2018."

97.    Defendants were not entitled to take a tip allowance from the minimum wage with respect to LEH.

98.    Defendants did not furnish LEH with a written notice that they were claiming a tip allowance pursuant to Section 195.1 of the NYLL.

99.    Neither did Defendants keep and maintain substantial evidence, pursuant to Section 142-2.5, subsection (b)(1)(ii) of the Wage Order that LEH's tips exceeded the thresholds set forth in Section 142-2.5, subsection (b)(2) of the Wage Order.

100.    Neither did Defendants record LEH's tips as a separate item in their wage record for LEH.

101.    LEH's base daily salary prior to about March 20, 2020 did not amount to more than the minimum wage.

102.    LEH did not receive any base pay after returning to work on or about June 22, 2020.

103.    LEH's commission after returning to work on or about June 22, 2020 did not amount to more than the minimum wage.

104.    Section 663.1 of the NYLL provides that "[i]f any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action the amount of any such underpayments, together with costs and reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due."

105.    Defendants knowingly, willfully, and maliciously disregarded the provisions of the NYLL by failing to pay LEH at least the minimum wage.

**COUNT III.**
**VIOLATION OF 29 U.S.C. § 207(a)(1)—FAILURE TO PAY OVERTIME**
**BROUGHT ON BEHALF OF THE PLAINTIFF AND THE COLLECTIVE**

106.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

107.    Section 207(a)(1) of the FLSA provides that "[e]xcept as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

108.    Throughout her employment, LEH was paid a flat salary or commission that did not include additional pay at time-and-a-half for overtime.

109.    Section 216(b) of the FLSA provides that "[a]ny employer who violates the provisions of… section 207 of this title shall be liable to the employee or employees affected in the amount of their… unpaid overtime compensation… and in an additional equal amount as liquidated damages," and further provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."

110.    Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA by failing to pay LEH overtime.

**COUNT IV.**
**VIOLATION OF 12 N.Y.C.R.R. § 142-2.2—FAILURE TO PAY OVERTIME**
**BROUGHT ON BEHALF OF THE PLAINTIFF AND THE CLASS**

111.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

112.    Section 659 of the NYLL authorizes the Commissioner of Labor to issue minimum wage orders, including the Wage Order.

113.    Section 142-2.2 of the Wage Order provides that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of… the Fair Labor Standards Act."

114.    Throughout her employment, LEH was paid a flat salary or commission that did not include additional pay at time-and-a-half for overtime.

115.    Section 663.1 of the NYLL provides that "[i]f any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action the amount of any such underpayments, together with costs all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due. Any agreement between the employee, and the employer to work for less than such wage shall be no defense to such action."

116.    Defendants knowingly, willfully, and maliciously disregarded the provisions of the NYLL by failing to pay LEH overtime.

### COUNT V.
### VIOLATION OF 12 N.Y.C.R.R. § 142-2.4—FAILURE TO PAY SPREAD OF TIME BROUGHT ON BEHALF OF THE PLAINTIFF AND THE CLASS

117.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

118.    Section 659 of the NYLL authorizes the Commissioner of Labor to issue minimum wage orders, including the Wage Order.

119.     Section 142-2.4 of the Wage Order provides that "[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which: (a) the spread of hours exceeds 10 hours; or (b) there is a split shift; or (c) both situations occur."

120.     Throughout her employment, LEH was paid a flat salary or commission that did not include additional pay at the minimum wage rate for each day her spread of time exceeded ten (10) hours.

121.     Section 663.1 of the NYLL provides that "[i]f any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action the amount of any such underpayments, together with costs all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due. Any agreement between the employee, and the employer to work for less than such wage shall be no defense to such action."

122.     Defendants knowingly, willfully, and maliciously disregarded the provisions of the NYLL by failing to pay LEH spread of time.

### COUNT VI.
### VIOLATION OF N.Y. LAB. L. § 195.3—FAILURE TO FURNISH WAGE STATEMENTS
### BROUGHT ON BEHALF OF THE PLAINTIFF AND THE CLASS

123.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

124.     Section 195.3 of the NYLL provides that "[e]very employer shall furnish each employee with a statement with every payment of wages, listing the following: the dates of work

covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked[;] and the number of overtime hours worked."

125.    LEH was not furnished a wage statement with each payment of wages.

126.    Defendants knowingly, willfully and maliciously failed to furnish LEH a wage statement as provided by Section 195.3 of the NYLL with each payment of wages.

## JURY DEMAND

127.    LEH demands a trial by jury on all matters so triable.

## PRAYER FOR RELIEF

WHEREFORE, LEH, on behalf of herself and on behalf of others similarly situated, respectfully requests that this Court enter a judgment providing the following relief:

A.    At the earliest practicable time giving notice of this collective action, or authorizing Plaintiff to give notice of this collective action, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of the notice's issuance, been employed by Defendants as non-exempt workers. Such notice shall inform such employees that this lawsuit has been filed, of the nature of this lawsuit, and of their right to join this lawsuit if they believe they were denied minimum wage or overtime pay;

B.    A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

C.     An injunction against Corporate Defendants, their owners, officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, including but not limited to the Individual Defendants, from engaging in each of the unlawful practices and policies set forth herein;

D.     An award of unpaid minimum wages, and liquidated damages equal to unpaid minimum wages, due to Plaintiff and any opt-ins under the FLSA;

E.     An award of unpaid minimum wages, and liquidated damages equal to unpaid minimum wages, due to Plaintiff and the Class under NYLL and the Wage Order;

F.     An award of unpaid overtime, and liquidated damages equal to unpaid overtime, due to Plaintiff and any opt-ins under FLSA;

G.     An award of unpaid overtime, and liquidated damages equal to unpaid overtime, due to Plaintiff and the Class under NYLL and the Wage Order;

H.     An award of unpaid spread-of-time, and liquidated damages equal to unpaid spread-of-time, due to Plaintiff and the Class under the NYLL and the Wage Order;

I.     An award of up to $5,000.00 per Plaintiff and per Class member as a penalty for failure to furnish Plaintiff and the Class members with accurate wage statements with each payment of wages;

J.     An award of prejudgment interest at a rate of 9 percent *per annum* pursuant to Section 5004 of the New York Civil Practice Law and Rules;

K.     An award of reasonable attorneys' fees and costs;

L.     An Order that, to the extent that any amounts remain unpaid upon the expiration of 90 days following the issuance of judgment, or 90 days after expiration of the time to appeal, no

appeal then being pending, whichever is later, the total amount of judgment shall automatically

increase by 15 percent, as required by Section 198, Paragraph 4 of the NYLL; and

M.      Any such other and further legal or equitable relief as the Court may deem

necessary, just, and proper.

Dated: Flushing, NY
      March 23, 2022

                        TROY LAW, PLLC
                        *Attorneys for Plaintiff and proposed FLSA Collective*

                        */s/ John Troy*
                        John Troy
                        Aaron B. Schweitzer
                        Tiffany Troy
                        41-25 Kissena Boulevard
                        Suite 103
                        Flushing, NY 11355
                        (718) 762-1324
                        troylaw@troypllc.com
                        *Attorneys for Plaintiff, proposed Collective, and proposed Class*